UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

UNITED STATES OF AMERICA,  Criminal No. 12-17 DSD/AJB

        Plaintiff,

v.  **REPORT AND RECOMMENDATION**

MARIO RONRICO SMITH,

        Defendant.

    Amber M. Brennan, Esq., Assistant United States Attorney, for the plaintiff, United States of America;

    Ryan P. Garry, Esq., for the defendant, Mario Ronrico Smith.

This action came on for hearing before the Court, Chief Magistrate Judge Arthur J. Boylan, on October 2, 2013, at the U.S. Courthouse, 300 South Fourth Street, Minneapolis, MN 55415. The court issued an Order on Motions dated October 3, 2013, reserving defendant Mario Ronrico Smith's motions to suppress evidence and dismiss the action for submission to the district court on report and recommendation.

Based upon the file and documents contained therein, along with witness testimony and exhibits received at hearing, the magistrate judge makes the following:

**Findings**

    **Vehicle Stop.** Crystal Police Officer Timothy Tourville was on routine patrol duty during the 6:30 p.m. to 6:30 a.m. shift on December 4, 2011. During the shift Officer Tourville located his squad car in a parking lot near a bridal shop in a commercial area along Bass Lake Road for the purpose of detecting eastbound speed limit violators on Bass Lake Road. At 11:51 p.m. the officer stopped a vehicle being driven by defendant Mario Ronrico Smith for

traveling at the rate of 41 miles per hour in a 30 miles per hour speed zone. No other improper driving conduct was observed. Upon making the stop the officer approached the vehicle driver and asked for a driver's license and proof of insurance. Defendant Smith produced a driver's license, but stated that the vehicle belonged to his aunt and he was not sure he had proof of insurance with him. During the encounter the officer smelled a faint odor of marijuana, as if someone in the car had recently smoked marijuana, coming from inside the vehicle. The defendant was cooperative and polite and the officer did not observe behavior indicating that the driver was impaired by drugs or alcohol. The defendant was the sole occupant of the car.

Officer Tourville went back to his squad car to conduct a driver's license and outstanding warrant check, and he called for backup assistance at that time. At 11:57, while still waiting for the backup to arrive, the officer returned to the defendant's vehicle and asked for permission to search the car, stating that he smelled a slight odor of marijuana. Defendant Smith denied permission to search, stating that consent was denied because it was his aunt's car. Officer Tourville again returned to his squad car and called for a drug detection dog to check the vehicle. Thereafter, Officer Barland arrived at the scene as backup. The K9 officer arrived within approximately five minutes after being summoned.

When the squad car with the drug detection dog arrived, the driver parked in front of the defendant's vehicle, though not in such a way that the defendant was blocked in. At that time, approximately 12:08 a.m., the defendant drove forward and fled from the officers. The K9 vehicle immediately followed and was in turn followed by Officer Tourville and the backup squad. During the subsequent chase Officer Tourville relinquished his second position to the backup police vehicle driven by Officer Barland. Officer Tourville temporarily lost sight of the

defendant's vehicle but the car chase ended with the use of a police maneuver on a frontage road to I-94 at approximately 12:13 a.m. Officer Tourville subsequently observed the defendant jumping over a fence and fleeing on foot across the freeway. The officer continued to pursue on foot across lanes of traffic until the defendant went over another fence and the officer lost track of him. Defendant Smith was not apprehended that night.

Following the unsuccessful foot chase Officer Tourville went to the defendant's vehicle where it was stopped on the frontage road. The car had been damaged in the stop maneuver. From outside the vehicle the officer observed a duffel bag on the front seat that appeared to contain a taped brick-like package. A second similar package was on the seat outside the duffel bag. The car was impounded and towed to the Crystal Police Department, but was not immediately searched by Officer Tourville.

**Vehicle Search Warrant.** On December 5, 2011, Hennepin County District Court Judge Peterson issued a warrant to search a particularly identified 2006 blue Dodge Charger (Gov't Hrg. Ex. A). The search warrant identified the objects of the warrant as controlled substances, drug packaging equipment and supplies, documents and electronic devices showing drug distribution activities and indicating the names and addresses of drug sources and customers, monies from drug sales, materials showing constructive possession of seized items, firearms, and evidence of drug ownership.

The warrant was issued on the basis of probable cause contained in the Affidavit of City of Crystal Police Investigator Pete Underthun, including information obtained in the course of the initial vehicle stop by Officer Tourville, the flight from police and the ensuing chase, and the plain view observation of suspected drug packages inside the vehicle. The

3

affidavit also referenced a positive K9 drug alert on the vehicle.

**Cell Phone Search Warrant.** On December 7, 2011, at 10:00 a.m., United States Magistrate Judge Steven E. Rau issued a warrant to search three particularly described cellular telephones and a Garmin Global Positioning System (Gov't Hrg. Ex. B).[1] The search warrant identified the objects of the warrant as electronic records of phone numbers; call records; names, addresses, and numbers in the phone memory; voice mail records and access information; e-mail and Internet access information; photos; GPS points; travel routes; longitude and latitude data; origination and destination points; and drug and currency stash locations.

The warrant was issued on the basis of probable cause contained in the Affidavit of DEA Task Force Officer and Dakota County Sheriff's Deputy Matthew Schepers, again reciting information obtained in the course of the initial vehicle stop by Officer Tourville, the flight from police and the ensuing chase, the plain view observation of suspected drug packages inside the vehicle, and the positive K9 drug alert on the vehicle. The warrant application further described evidence obtained as a result of the vehicle search warrant, including drugs, a firearm, and hidden currency.

Based upon the foregoing Findings, the magistrate judge makes the following:

## Conclusions

**Vehicle Stop.** Evidence obtained as result of a stop of the vehicle driven by defendant Mario Ronrico Smith on December 4, 2011, was not unlawfully obtained in violation of the defendant's constitutional rights and suppression of such evidence on grounds that the

---

[1] The three cell phones and the GPS unit were seized from the 2006 blue Dodge Charger pursuant to search warrant. (Gov't Hrg. Ex. A and Ex. B).

initial stop was unlawfully or unreasonably extended is not required. Furthermore, dismissal of this criminal action on grounds that the stop was unlawful or was conducted in an unlawful manner, thereby requiring suppression of evidence, is not required in light of the lawful stop.

The initial stop was lawfully based upon Officer Tourville's observation of a traffic violation. The officer's subsequent detection of the faint odor of marijuana was sufficient to warrant further investigation, including a K9 search of the exterior of the stopped vehicle, and the modest time delay incurred while waiting for the drug detection K9 to arrive at the location of the stop. The defendant's subsequent fleeing from the stop location provided ample probable cause for the ensuing police chase and the defendant's ultimate arrest on charges relating to items later seized from the vehicle.

Defendant Mario Ronrico Smith contends that evidence obtained from the Dodge Charger was unlawfully seized because it was the fruit of an initially lawful vehicle stop that was extended in duration for an unlawful reason and for a unreasonable length of time. However, for purposes of this suppression motion, uncontradicted and credible testimony establishes that Officer Tourville smelled the odor of marijuana coming from within the vehicle. Even though the odor was faint and the driver did not appear to be impaired, the detection of the marijuana odor provided reasonable suspicion warranting further investigation into whether unlawful activity was occurring. Indeed, the officer had probable cause to search the vehicle without first conducting a K9 search. United States v. Caves, 890 F.2d 87, 90 (8th Cir. 1989) (citing Johnson v. United States, 333 U.S. 10, 13 (1948) (testimony from a qualified witness as to the presence of the odor of an illegal substance may be the most persuasive type of evidence). In any event, Officer Tourville decided to take a less intrusive approach and summoned a drug detection K9 to

5

perform a sniff search of the exterior of the car. The stop was continued beyond that which might have been necessary for the initial speeding violation on the basis of particularized, objective facts, i.e. the odor of marijuana, which warranted the extended stop. United States v. Shafer, 608 F.3d 1056, 1062 (8th Cir. 2010).

With respect to the duration of the extended stop, no more than eleven minutes passed between the time the officer requested and was denied permission to search the car at 11:57 p.m., and the arrival of the K9 on the scene at 12:08 p.m.[2] The K9 unit was contacted promptly after consent to search was denied and there is no evidence that the Officer Tourville was dilatory in his investigation or that there was any unnecessary delay. United States v. Lyons, 486 F.3d 367, 372 (8th Cir. 2007) (a delay of 31 minutes was not excessive and citing cases in which delays of 59 minutes and 80 minutes were not excessive where officers acted diligently). The lapse of time attributable to waiting for the K9 to arrive in the present instance was not excessive or unreasonable. Id. ("[w]hen police need the assistance of a drug dog in roadside Terry stops, it will in general take time to obtain one . . . [law enforcement] cannot be expected to have drug dogs immediately available to all officers in the field at all times." (quoting United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994)). Defendant motions to suppress seized evidence and to dismiss the action based upon an unreasonably extended vehicle stop should be denied.

**Fleeing and Abandoning Vehicle.** Suppression of evidence seized from the Dodge Charger is not required under circumstances in which the driver fled from the scene of a

---

[2] The K9 arrived within five minutes after being summoned, and a total of 17 minutes elapsed between the vehicle stop and the defendant fleeing from the scene. No dog sniff search or other vehicle search was ever performed at the initial stop location.

lawful traffic stop, led police on a high-speed chase lasting approximately 5 minutes, was involuntarily brought to a stop by use a police maneuver, ran from the vehicle and escaped by jumping a fence and running across lanes of freeway traffic, and did not return to the vehicle. The driver abandoned the vehicle and thereby sacrificed any expectation of privacy in the vehicle which might have been implicated under the Fourth Amendment. United States v. Smith, 648 F.3d 654, 660 (8th Cir. 2011). In addition, the act of fleeing the initial stop constituted grounds for defendant's arrest which was attenuated from the earlier stop, and the evidence seized from the vehicle was not a fruit of the original stop and was not otherwise legally attributable to circumstances of the original stop. United States v. Dawdy, 46 F.3d 1427, 1431 (8th Cir. 1995) (a defendant's response to even an invalid arrest or Terry stop may constitute independent grounds for an arrest).

**Vehicle Search Warrant.** Evidence seized pursuant to a warrant to search the 2006 Dodge Charger driven by defendant Mario Ronrico Smith (Gov't Hrg. Ex. A), was not unlawfully obtained in violation of the constitutional rights of the defendant. The search warrant was issued on December 5, 2011, and was based upon sufficient probable cause as stated in the Affidavit of City of Crystal Police Investigator Pete Underthun and as determined by Hennepin County District Court Judge Peterson. The warrant properly and sufficiently identified the location of the search and the items to be seized, and the warrant adequately stated a nexus between the objects of the search and the place to be searched. Furthermore, the seized evidence was not the fruit of an unlawful stop. The search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant and no justification for dismissal of the case based upon unlawful seizure.

**Phone and GPS Search Warrant.** Evidence seized pursuant to a warrant to search three particularly described cell phones and a specifically identified GPS device (Gov't Hrg. Ex. B), was not unlawfully obtained in violation of the constitutional rights of defendant Mario Ronrico Smith. The search warrant was issued on December 7, 2011, and was based upon sufficient probable cause as stated in the Affidavit of DEA Task Force Officer and Dakota County Sheriff's Deputy Matthew Schepers and as determined by United States Magistrate Judge Steven Rau. The warrant properly and sufficiently identified the items to be searched and the information that was the object of the search, and evidence obtained as a result of searching the designated devices was not the fruit of an unlawful vehicle stop or unlawful search. See Wong Sun v. United States, 371 U.S. 471, 488, 83 S.Ct. 407 (1963). The search warrant in this matter was lawfully issued and there is no requirement for suppression of evidence seized pursuant to the warrant and no justification for dismissal of the case based upon unlawful seizure. [Docket Nos. 36 and 38].

**Arrest.** No evidence or argument was presented at the hearing with regard to defendant Mario Ronrico Smith's motion to suppress evidence and dismiss the action based upon his arrest in Chicago on May 20, 2013.[3] [Docket Nos. 36 and 38]. To the extent the motions to suppress and dismiss are based upon a contention that the arrest was the fruit of an unlawful vehicle stop and search relating to the underlying events of December 4 and 5, 2011, the motions are **denied** for reasons stated above. To the extent that the motions are based upon circumstances relating to the defendant's arrest and detention in Chicago in May 2013, the motions to suppress evidence and dismiss the case are **moot**.

---

[3] [Docket No. 6].

Based upon the foregoing Findings and Conclusions, the magistrate judge makes the following:

## RECOMMENDATION

The Court **hereby recommends** that:

1. Defendant Mario Ronrico Smith's Motion to Suppress Evidence and Dismiss Case for Violations Surrounding the Traffic Stop and Expansion be **denied** [Docket Nos. 35 and 37]; and

2. Defendant Mario Ronrico Smith's Motion to Suppress Evidence and Dismiss Case [Docket Nos. 36 and 38] be **denied**.

Dated:   October 31, 2013

     s/Arthur J. Boylan
Arthur J. Boylan
United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before November 8, 2013.

Unless the parties stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and file a complete transcript of the hearing within ten days of receipt of the Report.